BERNARD GAREN, DECEASED, RUTH GAREN, SURVIVING SPOUSE, AND RUTH GAREN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Garen v. Commissioner
Docket No. 7934-88
United States Tax Court
T.C. Memo 1990-92; 1990 Tax Ct. Memo LEXIS 92; 58 T.C.M. (CCH) 1504; T.C.M. (RIA) 90092; February 27, 1990
Gordon B. Cutler and Allan D. Teplinsky, for the petitioners. Thomas Travers and Dorothy W. Westover, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined a deficiency of $ 17,025.24 in petitioners' Federal income tax for 1984 and an addition to tax of $ 591.56 pursuant to section 6651(a)(1). Unless *93 otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. The issue for decision is whether petitioners are entitled to deductions claimed with respect to Bernard Garen's law practice. FINDINGS OF FACT Some of the facts have been stipulated, and the facts set forth in the stipulation are incorporated in our findings by this reference. Ruth Garen resided in Redondo Beach, California, at the time the petition in this case was filed. Bernard Garen died of a heart attack November 3, 1986. Nearly all of Bernard Garen's financial records were destroyed shortly after his death. Bernard Garen had been employed as a deputy superintendent and chief business official for various school districts. In this capacity, he was responsible for complete business management of a public institution that expended anywhere from $ 10 to $ 100 million per year. He served as a spokesman for the school districts in negotiating with employee organizations. Bernard Garen retired from his position as chief business official in June 1985. Bernard Garen *94 attended law school from 1970 to 1974 and was admitted to the California Bar in June 1975. From 1975 to 1985 he developed a part-time law practice that included assisting other school districts in labor negotiations. Bernard Garen used the lower floor of his house as an office for his law practice. The lower floor was furnished with a desk, an offset press, and a typewriter. The office included a law library complete with a full edition of the Pacific Reporter, 1st and 2nd editions, the California Reporter series, the West Codes, and the second series of the West Digest. Clark Garen, petitioners' son, was licensed to practice law in California in January 1972 and specialized in collection law. Clark Garen's practice grew steadily from the early 1970's until May of 1981. At that time, Clark Garen began spending substantial amounts of time in Houston, Texas, in an effort to preserve his investment in an interest he acquired in 1980 in an apartment complex. In October 1983, Clark Garen took over the entire apartment complex project. As a result of the time he was spending in Houston, Clark Garen's law practice began to erode. Realizing that the Houston venture would soon force *95 him to leave his own law practice, Clark Garen taught Bernard Garen about the various aspects of collection law and assisted his father through the infancy of his law practice. For 1981 through 1986, petitioners reported on Schedule C gross receipts of $ 83,174.50 and net losses of $ 204,684.31 from Bernard Garen's law and "consulting" practice. In 1984, Bernard Garen's law practice had gross receipts of $ 5,000. Clark Garen received interest-free loans from petitioners of $ 17,000 on March 29, 1982 (Note I), $ 65,995 on September 12, 1983 (Note II), and $ 17,210.87 on October 25, 1983 (Note III). In return for the loan amounts, Clark Garen prepared a form entitled "Note Secured By Deed Of Trust" that purportedly secured the repayment of the notes by the pledge of certain real property. The back of each note contained a ledger for recording payments on the note. The ledger indicated that Note I was repaid in full on December 20, 1984, Note II was repaid in full on December 20, 1984, and Note III was repaid in full on December 20, 1984. The faces of the Notes were marked "cancelled." Clark Garen received (1) check number 202 dated September 13, 1984 for $ 2,000 payable to "Clark *96 Garen, Attorney at Law, Debtor in Possession, General Account No. 59 3900 974 303," signed by Ruth Garen; (2) check number 203 on September 17, 1984, for $ 600 payable to "Clark Garen Attorney at Law" with an illegible notation, signed by Ruth Garen; (3) check number 205 on September 18, 1984, for $ 3,000 payable to "Clark Garen, Attorney at Law, Special Account #59 3900 990," signed by Ruth Garen; (4) check number 197 on October 12, 1984, for $ 200 payable to "Clark Garen," signed by Ruth Garen; (5) check number 206 on October 29, 1984, for $ 2,000 payable to "Clark Garen," signed by Bernard Garen; and (6) check number 213 on December 18, 1984, for $ 4,300 payable to "Clark Garen," not signed but cleared on an account in Ruth Garen's name. Petitioners' 1984 joint Federal income tax return was filed in December 1986, after the death of Bernard Garen. Petitioners claimed expenses for (1) depreciation of $ 172.61; (2) transportation of $ 231.47; (3) professional dues of $ 435.00; (4) telephone of $ 9.79; (5) stationery, office supplies and postage of $ 212.79; (6) entertainment of $ 236.18; (7) law books and subscriptions of $ 1,147.80; (8) home office of $ 2,469.37; and (9) attorney's *97 fees of $ 141,511.00. Respondent disallowed all of petitioners' claimed expenses. Petitioners concede liability for the late filing addition to tax under section 6651(a)(1). OPINION Petitioners have the burden of proving that they are entitled to the deductions that they claim. Rule 142(a). Petitioners presented no evidence of the claimed depreciation, transportation, professional dues, telephone, stationery, office supplies, postage, entertainment, law books, and subscriptions deductions. Accordingly, petitioners failed to meet their burden of proof with regard to those items. The issues that remain are (1) whether petitioners are entitled to a claimed home office deduction and (2) whether petitioners are entitled to a deduction for the amounts paid to Clark Garen. Home Office Deduction
Section 280A provides the general rule that no deduction is allowed with respect to business use of a residence. Petitioners may qualify for a deduction only by satisfying an exception to the general rule. Section 280A(c)(1)(A) provides: (1) Certain business use. -- Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit *98 which is exclusively used on a regular basis -- (A) [as] the principal place of business for any trade or business of the taxpayer. Petitioners rely on the testimony of Clark Garen for the claimed home office deduction, which was 40 percent of the claimed, but not substantiated, cost of maintaining petitioners' home. Clark Garen testified that the lower floor of petitioners' home was furnished with some office equipment, contained a law library, and to his knowledge, the room was used exclusively for business purposes. Further, Clark Garen testified that he prepared petitioners' Federal income tax return for 1984 and that he had substantiation for all of the amounts comprising the home office deduction. No records were offered into evidence. We are not persuaded by Clark Garen's testimony. Although Ruth Garen was called as a witness on behalf of petitioners, she was not asked about and did not testify about business use of the first floor of her home. She merely stated that she knew nothing about her husband's business. Petitioners have not sustained their burden of proof with respect to the home office deduction. Attorney's Fees Expenses
Petitioners claimed *99 deductions for attorney's fees of $ 141,511 for 1984 as amounts paid to Clark Garen for legal services he allegedly performed for Bernard Garen with respect to his father's law practice. The alleged transactions between Bernard Garen and Clark Garen were not at arm's length. They were between family members and thus subject to rigid scrutiny. . Clark Garen testified that he and his father had an agreement with respect to the compensation Clark Garen was to receive in return for providing service to his father. The substance of Clark Garen's testimony was as follows: Q What was that agreement? A I was going to be paid at the rate of $ 50 an hour for the time that I worked and I was supposed to keep records of my time and when the practice got to where it looked like it was going to be profitable, I'd be paid. Clark Garen received $ 141,511 in 1984, partly in the form of forgiveness of notes. During that same year Bernard Garen's law practice had only $ 5,000 in gross receipts. The law practice never was profitable or close to profitable, even when considering the fees Bernard Garen received for "consulting" *100 services. The time records Clark Garen purportedly maintained were not produced as evidence, and his testimony about the time he spent assisting his father is vague and totally inadequate to prove that he expended over 2,800 hours on that activity. He produced the purported statement rendered to his father only after his testimony had concluded and the Court inquired about his testimony that he had submitted a copy to the Internal Revenue Service. That statement is addressed to Bernard Garen on Clark Garen's letterhead, stated the amount of the purported fee, that it was paid in full, and described the services performed only as "rendered in connection with consulting and Legal Services Business." Ruth Garen testified only that unidentified persons removed records from her home after her husband's death. She did not corroborate her son's testimony about the alleged agreement, the services performed, the reasons for forgiveness of the notes, or the reasons for the checks payable to Clark Garen and signed by her. After consideration of the entire record and the significant omissions of evidence, we are unpersuaded by Clark Garen's testimony. Petitioners have failed to sustain *101 their burden of proof with respect to the claimed amount of attorney's fee expense. Decision will be entered for the respondent.